UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

:

KATEY SALAZAR,                                  :

:

Plaintiff,                      :

:

-v-                            :

:

THE CITY OF NEW YORK, OFFICER        :

ADRIANO DELEON (N.Y.P.D.) SHIELD     :

#02580, and OFFICERS JOHN DOE #1-10, :

:

Defendants.                     :

------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: July 11, 2016

15-cv-1989 (KBF)

OPINION & ORDER

KATHERINE B. FORREST, District Judge:

Plaintiff Katey Salazar was arrested for assault, resisting arrest, harassment and disorderly conduct following a St. Patrick's Day celebration in New York City on March 17, 2012.  On March 17, 2015, she brought the instant action against defendants pursuant to 42 U.S.C. § 1983, alleging claims of false arrest, excessive force, First Amendment retaliation, malicious abuse of process, fabrication of evidence, failure to intervene, and conspiracy.

Before the Court is defendants' motion for summary judgment on all counts. On June 3, 2016, the Court informed the parties that it intended to grant summary judgment as to all claims except for the claims for false arrest and fabrication of evidence.  This Opinion and Order sets forth the Court's opinion as to defendants' motion.

I.      BACKGROUND

    A.      Factual Background

The following facts are undisputed unless otherwise specified.[1]

On March 17, 2012, plaintiff Katey Salazar and her child's father Victor Arroyo celebrated St. Patrick's Day at a bar in the vicinity of East 52nd Street and Second Avenue in Manhattan. (Defs.' R. 56.1 Stmt. of Undisputed Material Facts ("Defs.' 56.1") ¶¶ 1-6, 8-9.) Also present were Salazar's friend Denise Negron and Negron's then boyfriend Brandon Wechsler. (Id. ¶¶ 4-5, 9.) Plaintiff arrived at the bar around 5 p.m. and remained for a number of hours. (Id. ¶ 6.) During this time, plaintiff alleges that she consumed one Bacardi and coke and a hamburger and French fries. (Id. ¶ 7; Pl.'s Response to Defs.' 56.1 ("Pl.'s 56.1 Resp.") ¶ 7.)

While at the bar, plaintiff and Arroyo began to argue; the argument was loud and physical. (Defs.' 56.1 ¶¶ 11-12.) Arroyo grabbed plaintiff by her hair and shoved her. (Id. ¶ 14.) At some point the altercation moved to outside the bar, where an unidentified civilian punched Arroyo. (Id. ¶ 15; Am. Compl. ¶ 25.) A brawl broke out with 50 to 100 people within the vicinity. (Id. ¶¶ 16-17.)

---

[1]      Plaintiff references certain evidence in her brief that are not discussed in her Local Rule 56.1 statement; the Court incorporates only those statements that are material to this motion. In addition, the Court disregards arguments and statements made without evidentiary basis in plaintiff's Local Rule 56.1 statement. See, e.g., Dewitt v. Home Depot U.S.A., Inc., No. 10-CV-3319 KAM, 2012 WL 4049805, at *1 (E.D.N.Y. Sept. 12, 2012); U.S. Fid. & Guar. Co. v. Madison Fin. Corp., No. 01 Civ. 3998 CM, 2002 WL 31731020, at *1 (S.D.N.Y. Dec. 4, 2002).

Police officers, including defendant Officer Adriano DeLeon, arrived at the scene and arrested Arroyo.[2]  (Id. ¶¶ 19-20.)  According to plaintiff, she became upset at the officers' treatment of Arroyo and told them to stop hitting him.  (Pl.'s 56.1 Resp. ¶ 21.)  A police officer told plaintiff to move back.  (Defs.' 56.1 ¶ 22.)

At this point, the parties' account of what occurred diverge.  Plaintiff alleges that she immediately complied and moved away from the scene.  (Pl.'s 56.1 Resp. ¶ 22.)  Specifically, she asserts that she and Negron remained five "car lengths" away from the altercation between Arroyo and the officers.  (Id. ¶ 23.)  Defendants, on the other hand, claim that plaintiff refused to move.  (Defs.' 56.1 ¶ 23.)

 Defendants assert that as DeLeon was arresting Arroyo, he felt a punch to the back of his head.  (Id. ¶ 24, 26.)  When he turned around, he saw plaintiff standing directly behind him.  Defendants also assert that another officer, Juan Perez, observed plaintiff hitting Arroyo as well.  (Id. ¶ 27.)  Plaintiff contests all of these assertions by defendants.  (Pl.'s Mem. in Opp. to Defs.' Mot. for Summ. J. ("Pl.'s Mem.") at 6.)

Plaintiff maintains that she never hit DeLeon.  While she acknowledges that it is possible DeLeon was hit, she claims that she was uninvolved and had already complied with orders to move away.  (Pl.'s 56.1 Resp. ¶¶ 24-25.)  Plaintiff also

---

[2]      Plaintiff asserts that at some point, she walked "as far up the block as [she] could get" to a distance of "a car and a large box truck between herself and the scrum."  (Pl.'s Mem. at 3.)  It is not clear if defendants dispute this fact.  However, resolution of this point is not necessary as it is undisputed that plaintiff was eventually close enough to tell the officers to stop hitting Arroyo and for the officers to tell her to move back.

suggests that DeLeon fabricated the idea that anyone punched him in the head. (Id. ¶¶ 24, 26.)

Officers eventually arrested plaintiff.[3]  (Id. ¶ 28.)  At some point—and it is unclear exactly if it was before, during, or after arrest—Officer Perez sprayed her with a chemical agent.  Plaintiff asserts that Officer Perez, who was standing approximately 15 feet away after she "moved away," "turned and stared at her for a moment—then coldly and deliberately raised his arm and sprayed her in the face with a chemical agent."  (Am. Compl. ¶¶ 4, 29.)

She also alleges that subsequently three to four officers "tackled her, kneeing her in the back and throwing her to the ground before handcuffing her."  (Am. Compl. ¶¶ 5, 30; see also Pl.'s Mem. at 3 (asserting that in effecting her arrest, a "swarm of officers threw [her] to the ground and 'manhandled' her . . . [Her] cheekbone hit the ground, she was pulled, kneed in the back, [and] her arm was twisted").)  According to plaintiff, this was an "effort to justify or otherwise cover up Perez's wrongful pepper-spraying" and to retaliate against her criticism of the officers' conduct.  (Pl.'s 56.1 Resp. ¶¶ 6, 7.)  Defendants, on the other hand, claim that plaintiff struggled with officers during her arrest and kicked them to avoid being sprayed,[4] citing to Denise Negron's testimony that plaintiff was "kicking and

---

[3]      Plaintiff asserts that DeLeon, Perez, and other officers participated in her arrest.  (Pl.'s 56.1 Resp. ¶ 28)

[4]      Plaintiff also makes a number of statements in her brief regarding the tightness of her handcuffs, her demeanor during and after arrest, and statements she made to officers during and after her arrest.  None of these statements are material to any issues on this motion.  (Pl.'s Mem. at 3-4.)  Plaintiff has never alleged these amounted to a constitutional violation.  (See, e.g., Am. Compl. ¶¶ 34-39.)

screaming." (Defs.' 56.1 ¶ 32.) Although plaintiff does not contest the truth of Negron's testimony that she was "kicking and screaming," she asserts that was doing so in response to being "unjustifiably maced." (Pl.'s 56.1 Resp. ¶ 32.)

Plaintiff was arrested for assault, resisting arrest, harassment, and disorderly conduct. DeLeon stated in the arrest report that plaintiff had "hit[] [Officer DeLeon] in the head but caus[ed] no injury." (Pl.'s 56.1 Resp. ¶ 24.) However, the criminal complaint against plaintiff signed by DeLeon stated that his injury caused pain and redness. (Pl.'s Mem. at 5.) Plaintiff also alleges that at the precinct, DeLeon told her that he did not feel any blow to his head, but rather that someone had told him that plaintiff had hit him. (Pl.'s 56.1 Resp. ¶ 24; Pl.'s Mem. at 5.)

DeLeon's criminal complaint also stated that Salazar and Arroyo had both been "swinging their arms and closed fists" at others. (Pl.'s 56.1 Resp. ¶ 24.) Plaintiff, however, contends that she had never joined Arroyo in fighting with others. (Id.)

Plaintiff ultimately accepted an Adjournment in Contemplation of Dismissal of her criminal charges. (Defs.' 56.1 ¶ 29.) She filed this action on March 17, 2015, exactly three years after the arrest occurred. (ECF No. 1.) She alleges that she suffers "agonizing emotional effects of her experience to this day." (Pl.'s Mem. at 7.)

B.    <u>Procedural Background</u>

Plaintiff filed her initial complaint on March 17, 2015 against the City of New York, NYPD Officer Adriano DeLeon, and ten "John Does." (Compl., ECF No. 1.) On October 5, 2015, plaintiff sought leave to amend her Complaint to add NYPD Officer Juan Perez as a defendant. (ECF No. 12.) The Court granted leave to amend, but also gave defendants leave to renew their oppositions to the amendment as a motion to dismiss under Rule 12(b)(6). (ECF No. 19.) The Amended Complaint was filed on October 8, 2015. (Am. Compl., ECF No. 16.) On December 14, 2015, defendants filed a motion to dismiss the Amended Complaint as to Officer Perez for failure to meet the relation-back requirements of Fed. R. Civ. P. 15(c)(1)(C). The Court converted this motion to a motion for summary judgment and granted the motion on March 7, 2016. (ECF Nos. 47, 54.) Thus, the only remaining defendants are Officer DeLeon and the City of New York.

II.   LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). When the moving party does not bear the ultimate burden on a particular claim or issue, it need only make a showing that the non-moving party lacks evidence from which a reasonable jury could find in the non-moving party's favor at trial. <u>Id.</u> at 322-23.

In making a determination on summary judgment, the court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010). Once the moving party has discharged its burden, the opposing party must set out specific facts showing a genuine issue of material fact for trial. Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," as "[m]ere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (internal citations omitted). In addition, "[o]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment." Porter v. Quarantillo, 722 F.3d 94, 97 (2d Cir. 2013) (internal quotation marks and citation omitted).

Only disputes relating to material facts—i.e., "facts that might affect the outcome of the suit under the governing law"—will properly preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (stating that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"). The Court should not accept evidence presented by the nonmoving party that is so "blatantly contradicted by the record . . . that no reasonable jury could believe it." Scott v. Harris, 550 U.S. 372, 380 (2007); see also Zellner v. Summerlin, 494 F.3d 344, 371 (2d Cir. 2007)

("Incontrovertible evidence relied on by the moving party . . . should be credited by the court on [a summary judgment] motion if it so utterly discredits the opposing party's version that no reasonable juror could fail to believe the version advanced by the moving party.").

III.   DISCUSSION

    A.   <u>False Arrest</u>

Plaintiff alleges that she was falsely arrested and that her arrest was not based on probable cause.  "To prove the elements of false arrest under New York law, plaintiff must show: (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged."  <u>Bernard v. United States</u>, 25 F.3d 98, 102 (2d Cir. 1994).  However, "[t]here can be no federal civil rights claim for false arrest where the arresting officer had probable cause" for the arrest.  <u>Singer v. Fulton Cty. Sheriff</u>, 63 F.3d 110, 118 (2d Cir. 1995).  Probable cause exists "when the officers have knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested."  <u>Manganiello v. City of New York</u>, 612 F.3d 149, 161 (2d Cir. 2010) (internal citations omitted).  Whether probable cause existed at the time of arrest can be determined as a matter of law only if "'no dispute as to the pertinent events and the knowledge of the [arresting] officers.'"  <u>Yorzinski v. City of</u>

8

New York, No. 1:14 Civ. 1302 GHW, 2016 WL 1270248, at *5 (S.D.N.Y. Mar. 31, 2016) (quoting Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996)).

As the Court indicated in its June 3, 2016 Order, plaintiff has presented genuine issues of material fact relevant to probable cause for her arrest that are sufficient to overcome summary judgment.  In particular, the Court finds that the following issues of fact—among others—remain under dispute and are subject to fact-finding by a jury:

1.  Whether plaintiff disobeyed the officers' order to move away from the altercation with Arroyo.

2.  Whether the officers observed plaintiff and Arroyo fighting—either with each other or with others.

3.  Whether Officer DeLeon felt a punch to the back of his head.

4.  Whether Officer Perez observed plaintiff punching Officer DeLeon in the back of the head.

5.  Whether Officer DeLeon fabricated allegations in his arrest report and criminal complaint.

These issues of fact are relevant to whether probable cause existed for arrest,[5] and therefore plaintiff's claim for false arrest should proceed to trial.

---

[5]      Moreover, the Court cannot grant summary judgment to defendants on the basis of qualified immunity at this time.  "When accused of making a false arrest, an officer is entitled to qualified immunity if there was arguable probable cause at the time of arrest."  Costello v. Milano, 20 F. Supp. 3d 406, 416 (S.D.N.Y. 2014) (internal quotations omitted).  Arguable probable cause exists if "either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met."  Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir. 1991).  When there are material factual disputes of the type here, however, the Court may not grant summary judgment on qualified immunity grounds. Tsesarskaya v. City of New York, 843 F. Supp. 2d 446, 459 (S.D.N.Y. 2012); McKelvie v. Cooper, 190 F.3d 58, 63 (2d Cir. 1999).  Thus, plaintiff's false arrest claim survives summary judgment.

B. Fabrication of Evidence

Some of the issues of fact discussed above are also relevant to plaintiff's claim that Officer DeLeon fabricated evidence.  To make out a claim for fabrication of evidence, a plaintiff must demonstrate that "an (1) investigating official (2) fabricates evidence (3) that is likely to influence a jury's decision, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of liberty as a result."  Jovanovic v. City of New York, 486 F. App'x 149, 152 (2d Cir. 2012).  Unlike a malicious prosecution claim, a fabrication of evidence claim is not defeated by the existence of probable cause.  Id.; Jocks v. Tavernier, 316 F.3d 128, 138 (2d Cir. 2003).

Defendants argue that because any allegedly fabricated evidence in this case would be inadmissible hearsay at a criminal trial, there was no constitutional violation.  The Court disagrees.  First, the Court notes that there is no requirement that a plaintiff alleging fabrication of evidence actually go to trial based on that evidence.  Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 127 (2d Cir. 1997) (allowing fabrication of evidence claim to proceed where plaintiff's criminal charges were dismissed).  Thus, the issue is not whether plaintiff did actually suffer a loss of her fair trial rights, but whether, had plaintiff proceeded to trial, the fact of the falsification would have rendered the trial unfair to her.

Second, while an arrest report and criminal complaint might not be independently admissible at a criminal trial, they might nevertheless—under certain circumstances—be used as impeachment evidence that may affect the

outcome of the trial.[6]  See, e.g., Fappiano v. City of New York, No. 15-260-CV, 2016
WL 860255, at *1 (2d Cir. Mar. 7, 2016) ("A fair trial claim may also arise where the
police or prosecutors withhold material exculpatory or impeaching evidence from a
defendant.").

The Court also notes that the fact that fabricated evidence which led to the
prosecution of an individual would constitute a violation of due process.  "It is firmly
established that a constitutional right exists not to be deprived of liberty on the
basis of false evidence fabricated by a government officer."  Victory v. Pataki, 814
F.3d 47, 64 (2d Cir. 2016), as amended (Feb. 24, 2016) (quoting Zahrey v. Coffey,
221 F.3d 342, 355 (2d Cir. 2000)).[7]  Whether those due process violations are cast as
violations of a fair trial right or violations of a right to be free from due process
violations that unduly deprive an individual of liberty is not one that the Court
finds significant in this context, especially since there is no requirement that a
plaintiff had actually proceeded to trial.

---

[6]     Defendants' citation to Jones v. City of New York is puzzling because in that case, the court
specifically noted that "[a] plaintiff asserting a fair trial claim need not show he was convicted or
that the case even went to trial" and that a constitutional violation has occurred "if an investigating
official creates false information that is likely to influence a jury's decision, forwards that
information to prosecutors, and the plaintiff is deprived of his liberty as a result."  Jones v. City of
New York, No. 12 Civ. 3658 JG, 2013 WL 6047567, at *9 (E.D.N.Y. Nov. 14, 2013), vacated and
remanded on other grounds, 603 F. App'x 13 (2d Cir. 2015).  Plaintiffs in that case could not succeed
on their fabrication of evidence claim because the Court determined that the evidence in question
was not material enough to be likely to influence a jury's decision—not because it was hearsay, as
defendants suggest.

[7]     Because "no reasonably competent officer could disagree that . . . [an] officer cannot properly
rely on evidence he knows to be false," qualified immunity cannot attach at this point.  Victory v.
Pataki, 814 F.3d 47, 64 (2d Cir. 2016), as amended (Feb. 24, 2016) (internal citations omitted).

Defendants also argue that they are absolutely immune as witnesses pursuant to Rehberg v. Paul, 132 S. Ct. 1497 (2012).  However, Rehberg does not "extend[] to all activity that a witness conducts outside of the grand jury room.  Id., 132 S. Ct. at 1507, n.1.  Instead, Rehberg stands for the proposition that a civil rights violation cannot stem "exclusively on the allegation that the investigator lied to the grand jury."  Coggins v. Buonora, 776 F.3d 108, 112 (2d Cir. 2015).  The protection is limited to live testimony under oath.  Id. ("[I]t makes sense to afford [officers] less protection in contexts other than the grand jury room.")  Indeed, the Rehberg Court noted that absolute immunity does not apply to those who "falsify affidavits and fabricate evidence," which is exactly what plaintiff alleges Officer DeLeon did here.  Rehberg, 132 S. Ct. at 1507, n.1.

Finally, the Court notes that while inconsistencies in an officer's arrest documentation do not—without more—rise to the level of fabrication, plaintiff's allegations regarding DeLeon's conduct from the scene of the altercation to the police precinct suggest a claim of more than mere documentary discrepancy. Rather, she alleges that DeLeon fabricated the idea that he even felt a punch to his head and / or that he fabricated the charge of assault against her knowing that she could not have punched him.  She also alleges that he fabricated evidence that she was observed fighting alongside Arroyo.  These are issues of fact for a jury to decide, and therefore this claim shall also proceed to trial.

12

C.  Excessive Force

Plaintiff has not sufficiently pled that Officer DeLeon used excessive force towards her.  Plaintiff's Amended Complaint alleges that it was Officer Perez who sprayed her in the face with a chemical agent and that it was Officer Perez and an unidentified Officer Doe who tackled her and assaulted her.  (Am. Compl. ¶ 29, 35.)[8] The charges against Officer Perez were dismissed because plaintiff failed to abide by Federal and Local Rules regarding amendment and relation back.  (ECF No. 54.) Nowhere in the Amended Complaint does plaintiff allege that DeLeon participated in the activities underlying her excessive force claim.  (Am. Compl. ¶¶ 29-39.)  As the claims against Officer Perez were dismissed, plaintiff cannot transfer the excessive force claims onto Officer DeLeon when nothing in the operative pleadings suggests that Officer DeLeon used excessive force.

Moreover, even if plaintiff properly pled an excessive force claim against Officer DeLeon regarding his being part of a group of three to four officers who brought her to the ground and handcuffed her, even on plaintiff's version of the facts, Officer DeLeon would be entitled to qualified immunity.  See Lynch, v. Ackley, 811 F.3d 569, 576-77 (2d Cir. 2016).  Qualified immunity attaches unless the right plaintiff claims was "so clearly established" that "it is obvious that no reasonably competent officer would have concluded" the amount of force used during plaintiff's

---

[8]     Plaintiff states in one portion of her Amended Complaint that "three to four officers tackled her" but later stated that "Defendant Perez and Officer Doe used excessive force . . . by proceeding to tackle her to the ground and assault her as aforedescribed." (Am. Compl. 29, 35.)  Because plaintiff's latter statement is more specific and alleges the constitutional violation, the Court understands her to only plead the excessive force claim against two of the "three to four" officers who tackled her.

arrest violated the law.  Malley v. Briggs, 475 U.S. 335, 341 (1986); see also Reichle v. Howards, 132 S. Ct. 2088, 2093 (2012).  This is a high bar, as qualified immunity "gives ample room for mistaken judgments" and "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley, 475 U.S. at 335, 341.

Plaintiff asserts that in effecting her arrest, a "swarm of officers threw [her] to the ground and 'manhandled' her . . . [Her] cheekbone hit the ground, she was pulled, kneed in the back, [and] her arm was twisted." (Pl.'s Mem. at 3.)  Even accepting all these assertions as true, it is not the case that "existing precedent placed the conclusion that [defendant] acted unreasonably in these circumstances 'beyond debate.'" Mullenix v. Luna, 136 S. Ct. 305, 209 (2015) (quoting Ashcroft v. Al-Kidd, 563 U.S. 731, 741 (2011)).  Rather, courts have held that "[n]ot every push or shove" in effectuating arrest constitutes excessive force. Romano v. Howarth, 998 F.2d 101, 105 (2d Cir. 1993).  Given that plaintiff has asserted that there was a crowd of 50 to 100 individuals and given that she does not contest deposition testimony that she had been "kicking and screaming," it is not "obvious that no reasonably competent officer would have concluded" the amount of force used during plaintiff's arrest violated the law. Malley, 475 U.S. at 341.  In fact, courts have held that some use of force to effectuate the arrest of even passive resisters was not objectively unreasonable. See Lieberman v. City of Rochester, 558 F. App'x 38, 39 (2d Cir. 2014) (affirming the district court in finding that body-slamming defendant to the ground before handcuffing was not objectively unreasonable);

14

Crowell v. Kirkpatrick, 400 Fed. App'x 592, 595 (2d Cir. 2010) (holding that officers' tasing was not objectively unreasonable in effectuating arrest of individuals who refused to physically release themselves for arrest).  Therefore, because it is not "obvious that no reasonably competent officer would have concluded" that bringing plaintiff to the ground, kneeing her in the back, and twisting her arm to effect arrest in this scenario was an unlawful use of force, Malley, 475 U.S. at 341, Officer DeLeon would be entitled to qualified immunity if plaintiff had properly pled an excessive force claim against him.

      D.  Retaliation in Violation of the First Amendment

      Plaintiff's claim that defendants retaliated against her for her exercise of her First Amendment rights fails as a matter of law.  To survive summary judgment on her claim for First Amendment retaliation, plaintiff must proffer evidence that:  "(1) [she] has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by [her] exercise of that right; and (3) defendants' actions effectively chilled the exercise of [her] First Amendment right." Curley v. Village of Suffern, 268 F.3d 65, 73 (2d Cir. 2001).  To meet the second element at summary judgment, "[s]pecific proof of improper motivation is required." Id.

      Plaintiff's retaliation claim fails because she cannot proffer any specific evidence supporting any of the three elements.[9]  Even assuming plaintiff meets the

---

[9]      Briefing from both parties focuses on arguments regarding probable cause as a complete defense to First Amendment retaliation claim.  Golodner v. City of New London, 443 F. App'x 622,

first element—that she had a First Amendment interest in her alleged criticism of officers' conduct which caused the officers to arrest her—plaintiff fails to offer any record evidence as to defendants' motives or as to any chilling effect defendants' actions had on her First Amendment rights.  Accordingly, plaintiff's First Amendment retaliation claim fails.

### E.   Malicious Abuse of Process

Plaintiff's claim for malicious abuse of process fails as a matter of law, as plaintiff fails to allege facts supporting her allegation that defendants had improper, collateral motives in arresting her.  "In New York, a malicious abuse of process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process."  Cook v. Sheldon, 41 F.3d 73, 80 (2d Cir. 1994).

Plaintiff has failed to proffer any facts suggesting that defendants had a collateral objective, the third required element of the claim.  "[I]t is not sufficient for a plaintiff to allege that the defendants were seeking to retaliate against [her] by pursuing [her] arrest and prosecution. Instead, [s]he must claim that they aimed to achieve a collateral purpose beyond or in addition to [her] criminal prosecution." Savino v. City of New York, 331 F.3d 63, 77 (2d Cir. 2003).  Plaintiff has only

---

624 (2d Cir. 2011).  As the Court noted above, however, there are factual disputes central to the question of whether probable cause existed.

alleged that defendants arrested her because they wanted to arrest her—which is not a <u>collateral</u> motive.  Therefore, her claim for malicious abuse of process fails as a matter of law.

      F.  <u>Failure to Intervene</u>

      "An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know: (1) that excessive force is being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official.  In order for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring."  <u>Anderson v. Branen</u>, 17 F.3d 552, 557 (2d Cir. 1994) (internal citations omitted).  Plaintiff's failure to intervene claim fails because such a claim requires that the officer against whom such a claim is asserted is not the same individual whom plaintiff alleges is violating her constitutional rights.  <u>See</u> <u>Anderson v. Branen</u>, 17 F.3d 552, 557 (2d Cir. 1994) ("[A]ll law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by <u>other</u> law enforcement officers in their presence." (emphasis added)); <u>Cuellar v. Love</u>, No. 11-CV-3632 NSR, 2014 WL 1486458, at *8 (S.D.N.Y. Apr. 11, 2014).  Here, plaintiff asserts that DeLeon <u>was</u> the officer who arrested her without probable cause and fabricated evidence against her.  Thus, she cannot also sustain a claim against DeLeon for failing to intervene in her arrest.

17

Plaintiff's claim of failure to intervene as to other alleged violation of her rights fail because she has not established violations of those rights.  "Failure to intervene claims are contingent upon the disposition of the primary claims underlying the failure to intervene claim."  <u>Usavage v. Port Auth. of New York & New Jersey</u>, 932 F. Supp. 2d 575, 599 (S.D.N.Y. 2013); <u>see also</u> <u>Matthews v. City of New York</u>, 889 F. Supp. 2d 418, 443-44 (E.D.N.Y. 2012).  Plaintiff has failed to make out a legal claim as to constitutional violations by other officers as to all but the false arrest and fabrication of evidence claims—both of which are asserted against DeLeon.

Finally, even if plaintiff could assert a failure to intervene claim against Officer DeLeon regarding the excessive force claim as to the pepper spray, which was not properly brought in this case, all plaintiff has alleged is that Officer DeLeon was standing near Officer Perez during the spraying, which is not sufficient to survive summary judgment.[10]  Plaintiff has adduced no record evidence that Officer DeLeon "observe[d] or ha[d] reason to know . . . that excessive force [was] being used."  <u>Anderson</u>, 17 F.3d at 557.  Nor has she proffered any evidence that Officer DeLeon had "a realistic opportunity to intervene to prevent the harm from occurring."  <u>Id.</u>  Thus, the failure to intervene claim would also fail on this basis.

---

[10]    Moreover, plaintiff has not proffered any evidence that it was "objectively unreasonable" for Officer DeLeon to believe that "his fellow officers' conduct did not violate [plaintiff's] rights."  <u>Ricciuti v. N.Y.C. Transit Auth.</u>, 124 F.3d 123, 129 (2d Cir. 1997).

G.  Conspiracy

Plaintiff has failed to proffer any evidence suggesting that defendants participated in any coordinated effort to fabricate evidence against her.  A claim for conspiracy under § 1983 requires evidence that "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages."  Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999).  Although plaintiff alleges Officer Perez's claim that he saw her strike Officer DeLeon was not truthful, she has not proffered any evidence that Officers Perez and DeLeon actually conspired to fabricate evidence against her.  No record evidence supports any of the above required elements.  For example, there is no record evidence that there was an agreement between any officers, nor is there any allegation as to what exactly was the specific overt act in furtherance of the conspiracy.  Any discussion that the officers "play[ed] dumb" at their depositions or allegation that the absence of paperwork was "a coordinated effort to cover-up police misconduct" is pure speculation and insufficient to establish that a triable issue exists.  See Ostensen v. Suffolk Cty., 236 F. App'x 651, 653 (2d Cir. 2007).  Therefore, the conspiracy claim must be dismissed.

H.  Monell Liability

To prevail against defendant City of New York on a § 1983 claim, plaintiff must allege that a particular municipal policy or custom contributed to the deprivation of her rights.  See, e.g., Monell v. Department of Social Services, 436

U.S. 658, 694 (1978); <u>Davis v. City of New York</u>, 75 F. App'x 827, 829 (2d Cir.2003) (collecting cases).  Plaintiff cannot sue the City under § 1983 "for an injury inflicted solely by its employees or agents," but rather must identify a "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy," pursuant to which it inflicted the injury.  <u>Monell</u>, 438 U.S. at 694; <u>see</u> <u>also</u> <u>Oklahoma v. Tuttle</u>, 471 U.S. 808 (1985).  Thus, plaintiff must both "prove the existence of a municipal policy or custom" and "establish a causal connection—an affirmative link—between the policy and the deprivation of his constitutional rights."  <u>Vippolis v. Haverstraw</u>, 768 F.2d 40, 44 (2d Cir.1985) (internal quotation marks omitted).

Plaintiff fails to plead a <u>Monell</u> claim against the City.  Plaintiff merely alleges in conclusory terms that "glaring abdications of officer supervision and training" exist within the NYPD and that "the absence of force-related documents was central to officers' ability to hide their conduct from scrutiny, to [plaintiff's] clear detriment."  (Pl.'s Mem. at 23-24.)  These statements are unsupported and insufficient to overcome summary judgment, as plaintiff fails to even identify what policy or practice caused the alleged deprivation of her rights in this case.  Furthermore, plaintiff's briefing as to the <u>Monell</u> claim focuses on the use of force, a claim that she has failed to properly sustain in this action.

## IV.   CONCLUSION

The Court has considered the parties' other arguments and finds that they are without merit.  For the reasons stated above, defendants' claim for summary

judgment is GRANTED on all counts except false arrest and fabrication of evidence. The Clerk of Court is directed to terminate the motion at ECF No. 64 and to amend the Caption of the case to reflect that the only remaining defendant is Officer Adriano DeLeon.

    SO ORDERED.

Dated:      New York, New York
            July 11, 2016

_____
    KATHERINE B. FORREST
    United States District Judge